```
          UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF WEST VIRGINIA
                  AT CHARLESTON
```

**MARY BERNICE MILLER,**

      **Plaintiff**

**v.**                              **Civil Action No.: 2:04-00918**

**JOHN Q. HAMMONS HOTELS, L.P.,**

      **Defendant**

## MEMORANDUM OPINION AND ORDER

Pending is defendant's motion for summary judgment filed May 12, 2005.

On July 22, 2004, plaintiff instituted this action in the Circuit Court of Kanawha County. She alleged claims under the West Virginia Human Rights Act (WVHRA) for discrimination based upon her (1) disability, (2) race, (3) gender, and (4) age. W. Va. Code § 5-11-9. On August 25, 2004, defendant removed, alleging jurisdiction pursuant to 28 U.S.C. § 1332(a). On September 28, 2004, plaintiff moved to remand, asserting the relief sought did not satisfy the jurisdictional minimum. On April 8, 2005, the court denied remand, concluding defendant had proven the existence of the jurisdictional minimum by a preponderance of the evidence. On July 6, 2005, the court

granted plaintiff's motion to voluntarily dismiss her claims for race, gender, and age discrimination. Plaintiff thus only pursues a claim for disability discrimination.

I.

Plaintiff Mary Bernice Miller is a fifty-four (54) year-old African-American and a West Virginia resident. (Am. Compl. ¶ 1; dep. of Mary Bernice Miller at 35.) Defendant John Q. Hammons Hotels, L.P., is a Delaware corporation, with its principal place of business in Missouri. (Not. of Remov. ¶ 2.) On April 29, 2000, defendant hired plaintiff in its housekeeping division at the Embassy Suites Hotel ("hotel") in Charleston. (Def.'s Memo. in Supp. at 3; Am. Compl. ¶ 3.) Plaintiff's duties included making beds, vacuuming, dusting, and cleaning restrooms. (Miller dep. at 39.)

Jay Johnston was the hotel's general manager at all relevant times. (Def.'s Memo. in Supp. at 3.) Debbie Kelly served as the human resources manager. (Id.) Kelly was responsible for interviewing and hiring plaintiff. (Id.)

On April 11, 2002, plaintiff sustained serious injuries when she was hit by a bus. (Am. Compl. ¶ 5.) She spoke

informally with Johnston sometime shortly after the accident. (Miller dep. at 24.)  She recounted that Johnston told her he would find some type of a receptionist or dispatch position in the office for her when she returned.  (Id. at 24-25.)  He said "I'll make sure you would never be working for housekeeping." (Id. at 158-59.)  Following the accident, plaintiff was on leave for approximately three (3) months.  (Id. at 20.)  She asserts she "counted" on Johnston's promise of a replacement position, adding she didn't "even want to do housekeeping."  (Id. at 159.)

       Plaintiff's treating physician restricted her from both lifting and bending.  (Id. at 22.)  She contends these restrictions continued through at least September 2002.  (Id. at 87.)  In July 2002, near the end of her three-month convalescence period, Kelly phoned plaintiff and told her to return to work. (Id. at 20.)  It appears the two discussed, inter alia, plaintiff's medical restrictions.  (Id. at 20.)  Plaintiff and Kelly also discussed the availability of light duty jobs in the hotel's office, laundry, kitchen, and banquet divisions.  (Id. at 18-19, 25.)  Plaintiff also mentioned Johnston's promise of other employment.  (Id. at 26.)

       Regarding the banquet division position, plaintiff states as follows:

3

> I also mentioned to her about the banquet.  She said I would be lifting the tray.  I say, "I work in the banquet so many time, I wouldn't have to lift them trays up.  I could set up the tables."

(Id. 25.)  Kelly later informed plaintiff there were no vacancies in the laundry or office divisions.  (Id. at 27-28.)  A chef at the hotel further advised plaintiff there were no kitchen openings.  (Id. at 31.)  Plaintiff believes hotel officials lied to her about these and other matters.[1]  (Id. at 98.)

On July 29, 2002, plaintiff received the following communication from Kelly:

> Your leave under the Family and Medical Leave Act ("FMLA") expired on July 22, 2002.
>
> We have received medical information from your physician indicating that you are able to return to work with restrictions at this time.  After speaking to Dr. Casto's office and discussing your return to work it has been determined that your current position of Room Attendant would not fit into the guidelines as described by Dr. Casto.  At this time we do not have a position that would meet the restrictions set forth by

---

[1] For example, despite the chef's information to the contrary, plaintiff asserted a short order cook vacancy existed in the kitchen.  (Compare id. at 90-91, with id. at 100.) Also, plaintiff asserts fellow employees told her there was an open telephone operator position.  (Id. at 99-100.)  At times, however, plaintiff was inconsistent in recounting such conversations.  Early in her deposition, plaintiff testified she heard from three (3) laundry room employees that a position was open in that division at the time.  (Id. at 21-22.)  She asserts she could have performed the job duties associated with this job.  (Id. at 21.)  Later, however, she testified laundry room employees told her no such positions were open.  (Id. at 90.)

4

> your doctor.
>
> Under the circumstances we will be taking the necessary steps to remove you from our active employment roster. We would invite you to contact us when you are able to work again to apply for any open positions for which you qualify.
>
> We look forward to hearing from you.

(Def.'s Mot. Summ. J., ex. D.)

Plaintiff asserts a fellow employee with similar physical restrictions, Pat Johnson, was accommodated by defendant. Johnson, an African-American female over the age of fifty (50), was allowed to do light duty work in the laundry and office divisions after she returned from a recuperative period. (Id. at 91-92.)

Although Kelly's letter invited her to do so, plaintiff never formally sought employment with the hotel thereafter. Although she visited the property on several occasions and talked to employees about potential openings, it is undisputed she never made similar inquiries of anyone she believed to be a manager at the hotel. (Miller dep. at 81, 155-56, 89-90.)

Plaintiff concedes no member of hotel management ever treated her poorly. (Id. at 106.) She asserts, however, her belief that Kelly did not like her. (Id. at 43.) When asked

5

whether she believed she was fired because of a disability, plaintiff's responses ranged from equivocal to inconsistent. When asked at one point whether she believed she was terminated as a result of her disability, plaintiff responded "Yeah, that could be." (<u>Id.</u> at 34.)  On another occasion, she asserts the accident rendered her only temporarily unable to perform the essential functions of her job.  (<u>Id.</u> at 35; Am. Compl. ¶ 5.) At yet another time, she professed she was not disabled around the time of her termination. (<u>Compare</u> <u>id.</u> at 39, <u>with</u> <u>id.</u> at 92, 149.)[2]

Plaintiff also discussed how her limitations affected her life:

---

[2]At one point during plaintiff's deposition, the following exchange occurred:

> Q.   In the summer of 2002, did you believe that you were disabled?
>
> A.   No.

(Miller dep. at 39.)  Later in her deposition, another query produced the following conflict:

> Q.   At the time that you were talking to the cook or the laundry people about these possible openings you've just been telling us about, did you believe you were disabled?
>
> A.   Yes.

(<u>Id.</u> at 92.)

6

> Q. What was wrong with you?
>
> A. It was my back, shoulder and my hips.
>
> Q. And you were limited in your physical activities as a result of something with your back or hip or shoulder?
>
> A. Yes.
>
> Q. What ways were you limited in your physical activity?
>
> A. Well, at first, I was not able to have sex. I didn't have no interest in social life, going out clubbing or party.
>
> . . . .
>
> Q. What you're able to do with your body.
>
> . . . .
>
> A. I'm not able to do the activity that I used to do, working out in the gym, riding my bike, do my housework – my housework.

(Id. at 150-51.)

Despite this somewhat limited self-appraisal of her capacity, plaintiff testified to her extensive job hunting activities between the time of her departure from the hotel up to January 2004, when she accepted a position with Special Touch Nursing:

> Q. Are you telling me you spent your full day, each day, applying for jobs?
>
> A. Yes.

(<u>Id.</u> at 143.)  During this seventeen-month period plaintiff refused another nursing job, apparently due to its distance from her home, and sought employment as a dietician with Charleston Area Medical Center.  (<u>Id.</u> at 136, 139, 157-158.)  She further conceded that she did not disclose any work limitations on her many applications.[3]  (<u>Id.</u> at 146.)

On October 2, 2002, plaintiff applied for disability insurance benefits and supplemental security income from the Social Security Administration ("SSA").  (Def.'s Mot. Summ. J., ex E.)  At that time, plaintiff represented to the SSA, <u>inter alia</u>, that:

1. She was unable to work because of a disabling condition that began April 22, 2002, just eleven (11) days after the bus accident; and

2. She would notify the SSA if her medical condition improved.

<u>Id.</u>[4]

---

[3]During this seventeen-month period, plaintiff also concedes that she (1) cared for her grandson during the evenings, (2) cooked for herself, and (3) began caring for her mother.  (<u>Id.</u> at 102, 103, 117.)

[4]On December 5, 2002, plaintiff sought review of the denial of her SSA applications.  On February 11, 2004, plaintiff re-applied for benefits, using the same disability onset date.  This claim was also denied, sometime in 2004.  (Miller dep. at 165.)  On July 27, 2004, just five days after she instituted this

(continued...)

Defendant contends that plaintiff does not suffer from a disability. The contention rests upon (1) plaintiff's conflicting deposition testimony, and (2) the asserted temporary nature of her condition. Alternatively, defendant claims plaintiff should be estopped from asserting she was a qualified person with a disability because of her representation to SSA that she was unable to work.

II.

A.  The Governing Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

---

[4](...continued)
action, plaintiff sought reconsideration of the second denial, stating "I feel I'm not able to work." (Def.'s Mot. Summ. J., ex. E.)

Although defendant made a specific discovery request to plaintiff's counsel for this material, no information on this topic was disclosed. Defendant subpoenaed the information directly from the SSA, which was received just two days prior to the close of discovery.

Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); Id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-moving party. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is not appropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts,

summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  <u>Overstreet v. Kentucky Cent. Life Ins. Co.</u>, 950 F.2d 931, 937 (4th Cir. 1991).

In reviewing the evidence, a court must neither resolve disputed facts or weigh the evidence, <u>Russell v. Microdyne Corp.</u>, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  <u>Sosebee v. Murphy</u>, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

B.   The Merits

Plaintiff's disability discrimination claim is bifurcated.  First, she asserts defendant failed to reasonably accommodate her.  Second, she alleges an unlawful discharge based upon her disability.  The parties are accurate in their mutual agreement that both claims require proof of a plaintiff's legally

11

cognizable disability.  On that point, the WVHRA provides pertinently as follows:

> It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, . . . .
>
>> For any employer to discriminate against an individual with respect to . . . terms, conditions or privileges of employment if the individual is able and competent to perform the services required even if such individual is . . . disabled . . . .

W. Va. Code § 5-11-9(1).

In <u>Messer v. Huntington Anesthesia Group, Inc.</u>, Apl. No. 31739, ---- W. Va. ----, ---- S.E.2d ---- (W. Va. 2005), the West Virginia Supreme Court of Appeals quoted recently the WVHRA's definition of a "disability[:]"

> The term "disability" means: (1) <u>A mental or physical impairment which substantially limits one or more of such person's major life activities</u>. The term "major life activities" includes functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and <u>working</u>; (2) A record of such impairment; or (3) <u>Being regarded as having such an impairment</u>.

<u>Id.</u> slip op. at 17-18 n.9 (quoting W. Va. Code § 5-11-3(m) (1998)).[5]

---

[5] Plaintiff also appears to assert she was regarded by defendant as having an impairment that substantially limited one or more of her major life activities.  The West Virginia Code of State Regulations provides one is "regarded as having an impairment" within the meaning of the WVHRA when that person:

(continued...)

12

The supreme court of appeals has additionally observed that "whether a person is a 'person with a disability within the meaning of the law' is ordinarily an issue of fact for a properly instructed jury or other fact-finder applying the definitional test set forth in the statute and implementing regulations." Syl. pt. 4, Stone v. St. Joseph's Hosp. of Parkersburg, 208 W. Va. 91, 94, 538 S.E.2d 389, 392 (2000).

Two considerations demonstrate plaintiff has raised a genuine issue of material fact on the question of her putative legal disability. First, her case bears some similarity to that of the plaintiff in Coffman v. West Virginia Bd. of Regents, 182 W. Va. 73, 386 S.E.2d 1 (1988), overruled on other grounds, Skaggs v. Elk Run Coal Co., Inc., 198 W. Va. 51, 479 S.E.2d 561 (1996). In Coffman, the supreme court of appeals' first foray

---

[5](...continued)
1. Has a physical or mental impairment that does not substantially limit major life activities but is treated by another as being such a limitation;

2. Has a physical or mental impairment that substantially limits major life activities, only as a result of the attitudes of others toward such an impairment; or,

3. Has none of the impairments defined above but is treated by another as having such an impairment.

77 W. Va. C.S.R. 1-2.8 (1994). The court need not reach this issue in view of its ultimate conclusion plaintiff has raised a genuine issue of material fact concerning whether she was disabled in fact.

into the area of disability discrimination in 1988, the court observed:

> Dorothy Coffman was employed as a Custodian I at the West Virginia University Hospital in Morgantown, West Virginia. In October, 1980, Coffman injured her back while emptying garbage cans. During the months following the injury, Coffman suffered back pain which interfered with her ability to perform the duties of her job. In June, 1981, Coffman submitted to her supervisors the unsolicited reports of two physicians who recommended that Coffman avoid activities which required heavy lifting. One of the physicians, an orthopedist, concluded that Coffman was temporarily disabled. Coffman then missed work the month of July, 1981, during which time she received temporary total disability benefits from workers' compensation. Coffman's supervisors then directed her to Dr. Ed Morgan, Medical Director of University Health Service at West Virginia University, for a more detailed evaluation of her medical problem and for a recommendation of job limitations. Dr. Morgan concluded that Coffman was "okay for light work; can lift 10-15 lbs."

Id. at 74, 386 S.E.2d at 2 (footnote omitted). In a footnote, the West Virginia court observed additionally "During this period, Coffman was examined by another orthopedist, who advised that she lift no more than ten pounds and avoid prolonged or repeated bending." Id. at 74, 386 S.E.2d at 2 n.2.

The supreme court of appeals noted "No party has challenged the fact and we, therefore, acknowledge that Coffman was handicapped as defined by West Virginia law." Id. at 79, 386 S.E.2d at 7; see also Stone, 208 W. Va. at 101, 538 S.E.2d at 399 (characterizing Coffman as "holding that a woman who suffered

14

back pain, who was medically limited to light lifting, and who had problems bending, could make a claim").

Second, despite the many twists and turns in plaintiff's deposition testimony, a key piece of evidence on the issue of her putative legal disability is Kelly's letter of July 29, 2002:

> Your leave under the Family and Medical Leave Act ("FMLA") expired on July 22, 2002.
>
> We have received <u>medical information</u> from your physician indicating that you are <u>able to return to work with restrictions</u> at this time.  <u>After speaking to Dr. Casto's office</u> and discussing your return to work it has been determined that your current position of Room Attendant <u>would not fit into the guidelines as described by Dr. Casto</u>.  <u>At this time we do not have a position that would meet the restrictions</u> set forth by your doctor.

(Def.'s Mot. Summ. J., ex. D (emphasis added).)

There are a number of facts in this letter that are germane in the disability calculus, leaving aside the credibility determinations that inevitably arise from plaintiff's deposition testimony.[6]  First, plaintiff might use the letter to help

---

[6]It is beyond cavil that plaintiff testified in what appears to be an inconsistent, and at times evasive, manner during her deposition.  The court would necessarily exceed its warrant at this stage, however, in either rejecting her testimony or merely selecting those representations that would prove most devastating to her case.  That function is properly reserved for the jury, and, absent evidentiary grounds for exclusion, defendant may confront plaintiff with what may prove to be fertile areas of
(continued...)

demonstrate she was severely limited at the time of her termination from bending and lifting.  Second, she could assert that these physical impairments substantially limited her from working in the manual labor job that she possessed, along with comparable alternatives.  Indeed, her restrictions, and the lack of comparable positions accommodating the same, were, plaintiff would argue, the reasons for her termination.  Coalescing this piece of documentary evidence with the relevant statutory definition discloses that there is a genuine issue of material fact as to whether plaintiff was disabled in fact.  W. Va. Code § 5-11-3(m) (1998)(defining a disability as "[a] . . . physical impairment which substantially limits one or more . . . major life activities. . . . such as . . . working.")

Defendant seeks to avoid this result by contending plaintiff's condition was (1) only temporary, and (2) not serious.[7]  The court has not been presented, however, with a

---

[6](...continued)
impeachment.

[7]The court notes temporary conditions are not excluded categorically from the disability definition.  <u>Haynes v. Rhone-Poulenc, Inc.</u>, 206 W. Va. 18, 20, 31, n.17, 521 S.E.2d 331, 333, 344 n.17 (1999) (stating "We hold . . . that a person who is temporarily unable to work is protected by the provisions of our Human Rights Act that prohibit discrimination against persons with disabilities in connection with their employment" but further stating "We want to make clear that in the context of this case, by disabling condition, we refer to a totally disabling medical condition of limited duration, so that following a temporary leave of absence for treatment and
(continued...)

showing that would require judgment as a matter of law in defendant's favor on either point. Although plaintiff herself at one point suggested her disability was only temporary, her most recent application to the SSA indicates the malady persists. Although the court is cognizant of defendant's factual arguments to the contrary, arguments which may ultimately carry the day with the fact finder or at the close of plaintiff's case, judgment as a matter of law is simply not appropriate at this time.

Defendant also asserts plaintiff's SSA applications should estop her from asserting a claim of disability discrimination under the WVHRA. In <u>Cleveland v. Policy Management Systems Corp.</u>, 526 U.S. 795 (1999), the Supreme Court held "pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim. Nor does the law erect a strong presumption against the recipient's success under" that disability discrimination statute. <u>Id.</u> at 797-98. At the same time, the Supreme Court observed as follows:

> Nonetheless, an ADA plaintiff cannot simply ignore her SSDI contention that she was too disabled to work. To survive a defendant's motion for summary judgment, she must explain why that SSDI contention is consistent with her ADA claim that she could "perform the essential functions" of her previous job, at least with "reasonable accommodation."

---

[7](...continued)
improvement, it is reasonably foreseeable that the plaintiff is likely to be able to return to work.").

17

Id. at 798.

The court concludes plaintiff has sufficiently explained the potential conflict.  First, under the WVHRA, a plaintiff alleging disability discrimination often, as here, asserts that she can perform her job with reasonable accommodation.  As noted in Cleveland, this contention "may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) without it."  Id. at 803.  Second, as further noted in Cleveland, "an individual might qualify for SSDI under the SSA's administrative rules and yet, due to special individual circumstances, remain capable of 'perform[ing] the essential functions' of her job."  Id.

Of paramount importance here, however, is the final rationale in Cleveland:

> Finally, if an individual has merely applied for, but has not been awarded, SSDI benefits, any inconsistency in the theory of the claims is of the sort normally tolerated by our legal system. Our ordinary Rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to "set forth two or more statements of a claim or defense alternately or hypothetically," and to "state as many separate claims or defenses as the party has regardless of consistency." Fed. Rule Civ. Proc. 8(e)(2). We do not see why the law in respect to the assertion of SSDI and ADA claims should differ. (And, as we said, we leave the law in respect to purely factual contradictions where we found it.)

Id. at 805.  As noted, plaintiff's applications to the SSA have been repeatedly denied.

Based upon the foregoing, the court concludes that, at a minimum, a genuine issue of material fact remains concerning whether plaintiff was "disabled" under West Virginia Code section 5-11-9(1).  Accordingly, defendant is not entitled to judgment as a matter of law on plaintiff's claims.  The court ORDERS that defendant's motion for summary judgment be, and it hereby is, denied.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: July 19, 2005

_____
John T. Copenhaver, Jr.
United States District Judge